UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAURA REEDER,<br>　　Plaintiff<br><br>V.<br><br>SUN LIFE FINANCIAL DISTRIBUTORS,<br>INC., a foreign corporation,<br>　　Defendant | CIVIL ACTION NO. 05-10534-NMG |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO ENLARGE THE RECORD**

**NATURE AND STATUS OF PROCEEDINGS**

This is an ERISA case in which the plaintiff seeks judicial review of the defendant's denial of her claim for long-term disability benefits. The plaintiff, Laura Reeder ("Ms. Reeder") seeks to recover long-term disability benefits pursuant to a long-term disability policy issued by the defendant, Sun Life Assurance Company of America ("Sun Life"), to her employer, Sun Life Financial Distributors, Inc. The policy gives Sun Life discretionary authority to make benefit determinations. As such, this case will be reviewed under the arbitrary and capricious standard of review.

Ms. Reeder underwent an open cholecystectomy for her gallbladder on May 31, 2003. She was paid short-term salary continuance from her employer through November 9, 2003. Ms. Reeder filed a long-term disability claim with Sun Life claiming to be totally disabled due to Crohn's Disease. Sun Life denied her claim finding that Ms. Reeder had recovered from her

surgery and was not disabled from performing the duties of her sedentary occupation due to Crohn's Disease. Ms. Reeder then filed this action against Sun Life.

Sun Life has produced the Administrative Record in this case and Ms. Reeder has filed a motion seeking to add to the record five letters[1] from her employer regarding her short-term disability claim, salary continuance, and leave of absence. It is undisputed that Ms. Reeder did not submit these letters to Sun Life during the administrative review of her claim. Since Ms. Reeder did not attach them to her motion, Sun Life attaches them here as Exhibit A through E for the Court's review.

Sun Life submits this memorandum in opposition to Reeder's motion to enlarge the record. Ms. Reeder's motion should be denied because she has failed to show a sufficient basis for adding these five letters to the Administrative Record.

## ARGUMENT

1.  Plaintiff Has Failed To Provide A "Very Good Reason" For Enlarging The Administrative Record.

In an ERISA case, "[t]he decision to which judicial review is addressed is the final ERISA administrative decision. It would offend interests in finality and exhaustion of administrative procedures required by ERISA to shift the focus from that decision to a moving target by presenting extra-administrative record evidence going to the substance of the decision." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005). The focus of judicial review in this context is limited to the record before the administrator and "at least some very good reason is needed to overcome that preference." Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003); see also Orndorf, 404 F.3d at 519.

---

[1] In her motion and memorandum, Ms. Reeder actually mentions seven letters dated: June 19, 2003; August 1, 2003; August 11, 2003; October 9, 2003; November 3, 2003; November 19, 2003; and December 9, 2003. However, the letters dated November 19th and December 9th are already part of the administrative record. Therefore the only letters at issue are the five letters attached hereto as Exhibits A-E for the Court's review.

Plaintiff did not submit these letters to Sun Life during the review of her benefit claim. Now Ms. Reeder claims that this correspondence "should have been considered by the defendant." However, in the First Circuit the plaintiff bears the burden of proving her disability claim. <u>Orndorf</u>, 404 F.3d at 518-19. Regardless of whether Ms. Reeder's employer was across the hall or across the continent from Sun Life, Ms. Reeder had the obligation of submitting for consideration as part of her disability claim whatever correspondence she thought was relevant and important. Ms. Reeder had every opportunity to submit these letters for consideration during the claims process and did not. When a plaintiff has had ample time to collect records and had an administrative appeal review of her claims, even if the new evidence directly concerned the question of her disability before the final administrative decision, it would be an abuse of discretion to admit it after the fact. <u>Id</u>. at 519. However, as discussed below these five letters have absolutely no bearing on the substance of Ms. Reeder's disability claim. As such, Ms. Reeder's motion should be denied.

    2.    <u>The Letters Plaintiff Seeks To Add To The Administrative Record are Unrelated To Her Long-Term Disability Claim.</u>

The five letters that plaintiff seeks to add to the record are all correspondence between Ms. Reeder and her employer regarding her short-term disability claim, which is separate and unrelated to Ms. Reeder's long-term disability claim. These letters are administrative in nature and relate solely to Ms. Reeder's employee benefits under the Family Medical Leave Act, her short-term disability claim and the duration of her salary continuance. See Exhibits A through E.

None of these letters contain information about Ms. Reeder's ability to work.[2] Rather, they discuss the fact that Ms. Reeder has not returned to work and under the Family Medical Leave Act Sun Life may need to fill her position. These letters have absolutely no bearing on the substance of Ms. Reeder's long-term disability claim and there is absolutely no reason, let alone "a very good reason" for adding them to the Administrative Record.

## CONCLUSION

For each of the foregoing reasons the plaintiff's motion should be denied.

---

[2] In her motion, Ms. Reeder claims that a letter dated November 19, 2003 is of "critical importance" because she claims that it indicates that Ms. Reeder's employer had determined that she could not perform the essential functions of her job. Ms. Reeder has grossly misconstrued the contents of this November 19, 2003 letter. A review of this letter shows that her employer states that Ms. Reeder was not performing the important functions of her job, not that she could not do so. However, even if Ms. Reeder's characterization of this letter was accurate, it does not provide any basis for adding to the Administrative Record because this letter is already contained in the Administrative Record at page 271A-271C.

SUN LIFE ASSURANCE COMPANY OF CANADA improperly named as SUN LIFE FINANCIAL DISTRIBUTORS INC.

By its attorney,

/s/ Kristina H. Allaire
Joan O. Vorster, Esq., BBO #550375
Kristina H. Allaire, Esq., BBO #646001
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

Dated: February 24, 2006

CERTIFICATE OF SERVICE

I, Kristina H. Allaire, hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, first class mail, postage prepaid, to Lindsay P. Rand, Esq., Nashawaty & Rand, 654 Washington Street, Suite 100, Braintree, MA 02184.

Kristina H. Allaire, Esq.

Dated: February 24, 2006



# Sun Life Financial℠

| | | |
|---|---|---|
| | Mary T. Kowalski<br>Sr. Human Resources<br>Administrator<br>Human Resources | Sun Life Assurance<br>Company of Canada<br>SC 3040<br>One Sun Life Executive Park<br>Wellesley Hills, MA 02481-5699<br>Tel: 781-446-1656<br>    800-432-1102 ext. 1656<br>Fax: 781-237-5132<br>mary.kowalski@sunlife.com |

June 19, 2003

Laura Reeder
1 Centennial Drive, #3
Norwood, MA 02062

Family and Medical Leave Notification

Dear Laura,

We have been notified of your need to take family/medical leave due to:

A. Reason for Leave of Absence

    \_\_\_\_\_ the birth of a child or the placement of a child for adoption or foster care and in order to care for that child;

    \_x\_ a serious health condition that you need care for and that makes you unable to perform the essential functions of your job; or,

    \_\_\_\_\_ a serious health condition affecting your
        \_\_\_ spouse
        \_\_\_ child
        \_\_\_ parent
    for whom you need to provide care.

B. Duration of Leave

We were notified that you needed this leave beginning on April 28, 2003.

This leave of absence will be counted as part of the annual 12-week leave entitlement under the federal Family and Medical Leave Act (FMLA) for eligible employees. The 12-month period during which an eligible employee can take a leave is measured backward on a "rolling" basis from the date when an employee uses any such leave. An employee's leave entitlement consists of any balance of the 12 weeks that has not been used during the immediately preceding 12-month period.

Sun Life Assurance Company of Canada
is a member of the Sun Life Financial group of companies.

www.sunlife-usa.com

If you have any paid leave available (for example Sun Days and/or sick leave), we may require that all available, appropriate paid leave be used concurrently with any leave under the FMLA until the paid leave is exhausted.

### C. Medical Certification

If your leave is because of a serious health condition of your own or a family member, you must furnish the Company with appropriate medical certification (certification of health care provider form is enclosed) as soon as practicable, but no later than 15 calendar days after receiving notice of the requirement that medical certification is required. The certification must be signed by an appropriate health care provider. The Company may deny the taking of leave until the required certification is provided. The Company may, in its discretion, require you to obtain a second, and possibly a third opinion, at Company expense, if you are seeking leave because of a serious health condition.

When you are on leave, subsequent recertifications of a medical condition must be submitted upon the Company's request.

When medically necessary, you may take "intermittent" leave (two or more separate leave periods) or "reduced" leave (where an employee continues to work, but for fewer hours per day or per week). In such cases, the total number of hours or days of leave taken by you is limited to the equivalent of 12 work-weeks. You must make a reasonable effort to schedule the leave in a manner that will not unduly disrupt the Company's operations. The Company may transfer an employee on intermittent or reduced leave to an available alternative position with equivalent pay and benefits for which the employee is qualified if that position can accommodate recurring periods of leave better than the employee's regular job.

If you desire and are eligible for FMLA leave on an intermittent or reduced schedule basis, you must provide the Company with medical certification that it is medically necessary for you to work on an intermittent or reduced schedule basis, as well as a statement from you as to the reasons why the intermittent or reduced leave schedule is necessary.

### D. Health Insurance and Other Insurance Benefits

While you are out on leave covered by the FMLA, you will be maintained on the Company's group health insurance and other insurance benefit plans at the same level, with the same coverage and under the same conditions as if you had not taken leave. If you are on paid leave taken concurrently with your FMLA leave, your share of premium payments will be deducted from your paycheck in the usual manner. If you are on unpaid leave, you should contact the Human Resources Service Center at 800-432-1102, extension 4747 in order to make arrangements to pay your portion of the payments to avoid cancellation of your health insurance coverage and other benefits. You have a thirty-day grace period in which to make such payments. If any such payment has not been made in a timely fashion, your group health insurance or other benefits may be cancelled. Or, at the Company's option, it may pay your

share of the premiums during the FMLA leave and recover these payments from you upon your return to work.

If you fail to return to work at the end of the FMLA leave period and your failure to return to work is not due to circumstances considered to be beyond your control, you must reimburse the Company for health insurance and other premiums that were paid by the Company while you were on leave. Medical certification may be required before an employee will be released from the requirement to provide reimbursement for these premiums.

If you fail to return to work at the end of your leave of absence and you have used Sun Days that have not been accrued, you must reimburse the Company for those Sun Days.

### E. Communication While on Leave

During the course of your leave of absence, you are expected to maintain contact with your manager and to update him or her of any changes in your situation. The Company's obligations under the Family and Medical Leave Act cease when an employee gives the Company notice of his or her intention to not return to work.

### F. Return from Leave

If your leave is a result of your own serious health condition, the Company requires that you provide fitness for duty certification, signed by a health care provider, in order to return to work.

Upon your return from FMLA job-protected leave, you will be restored to either the same position you held when the leave commenced or to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment.

Sincerely,

Mary Kowalski
Senior Human Resources Administrator

enclosures:
disability packet
FML certification form
key card memo

electronic copy:
Ralph Milliken

**Sun Life Financial**[SM]

### Short-term salary continuance

If you wish to apply for salary continuation due to your own disability, the attached forms must be completed and returned within 10 days of the date of your leave of absence notification letter. Failure to provide adequate medical documentation to support a disability claim will result in termination of salary continuance.

The first five days absent from work, due to an illness or injury, in general, are considered personal illness and you will be paid for the time away from work if you have accrued sick leave days.

For up to the next 25 weeks, as long as you remain unable to work (21 weeks if you are 65 or older when the disability begins), benefits equal to either 100 percent or 60 percent of your salary, whichever is applicable, will be paid under the program. The actual benefit duration and the amount in terms of a percent of pay will depend on how long you have worked for Sun Life Financial as shown below.

| Length of service | 100% benefit | 60% benefit |
| --- | --- | --- |
| Under 2 years | 2 weeks | 23 weeks |
| 2 through 4 years | 8 weeks | 17 weeks |
| 5 through 9 years | 16 weeks | 9 weeks |
| 10 or more years | 25 weeks | |

Any benefit to which you are entitled under the short-term salary continuance policy and program will be reduced by any disability benefits that you are entitled to under any state disability income plan. You are responsible for submitting documentation evidencing any disability income to Mary Kowalski, SC 3040.



**Sun Life
of Canada**
*Wellesley Hills, MA*

Sun Life Financial
Human Resources Dept./MK SC 3040
One Sun Life Executive Park
Wellesley Hills, MA 02481
tel. 781/446-1656  fax 781/237-5132

# Employee's Authorization

I **AUTHORIZE** any physician, medical practitioner, hospital, clinic, other medical or medically related facility, pharmacy, insurance or reinsuring company, vocational rehabilitation company or state agency, consumer reporting agency, the Medical Information Bureau, Inc., or employer to disclose or furnish to Sun Life Assurance Company of Canada, or its legal representative, or to my employer, any and all information with respect to any physical or mental condition and/or any other non-medical information that may be requested. I further **AUTHORIZE** the Social Security Administration to release information to Sun Life Assurance Company of Canada concerning entitlement dates and benefit amounts for myself and my dependents.

I **UNDERSTAND** the information obtained by Sun Life Assurance Company of Canada will be used for the determination of sick leave benefits with my employer. I understand that all information and files assembled by Sun Life Assurance Company of Canada for advice concerning a claim shall remain the property of Sun Life Assurance Company of Canada. Sun Life Assurance Company of Canada shall have sole discretion over what information, if any, it may release upon any request for information or review.

I **KNOW** that a true copy of this Authorization is available to me at any time upon request.

I **AGREE** that a photostatic or facsimile copy of this authorization is to be considered as valid as the original and is effective until I return to work.

I understand that some states require that I be notified that any person who, with intent to defraud or knowing that he or she is facilitating a fraud, submits an application or files a claim containing a false or deceptive statement, may be guilty of a crime.

_____      _____
Employee Name (please print)                                              Service Number

_____
Company Name (please print)

_____      _____
Signature of Employee                                                              Date

XGR18/651                                                                                                    SLPC 5938    05/00

**Sun Life of Canada**

Sun Life Financial
Human Resources Dept./MK SC 3040
One Sun Life Executive Park
Wellesley Hills, MA 02481
tel. 781/446-1656  fax 781/237-5132

# Attending Physician's Statement

**TO BE COMPLETED BY THE PHYSICIAN**
The patient is responsible for any costs associated with the completion of this form.

| Name of Patient: | Social Security Number: | Date of Birth: |
|---|---|---|
| Patient's Employer: | | |

## 1. HISTORY

| A. When did symptoms first appear or accident happen? | B. Date disability commenced. | C. Has patient ever had same or similar condition?  ☐ Yes  ☐ No  If yes, when: |
|---|---|---|
| D. Is condition due to injury or sickness arising out of patient's employment?  ☐ Yes  ☐ No  ☐ Unknown | | E. If condition is due to car accident, indicate state in which accident occurred. |

F. Names and addresses of other treating physicians (if applicable).

## 2. DIAGNOSIS

A. Diagnosis (including any complications). Include ICD9 Code.

| B. Objective findings (including current X-Rays, EKG's, MRI's, laboratory data, scans and/or any other clinical findings): | C. Subjective Symptoms: |
|---|---|
| D. If pregnancy, what is the expected date of delivery? | E. What was the actual date of delivery? |

F. Type of Delivery:  ☐ Vaginal  ☐ C-Section

G. Please describe any complications that would extend this disability longer than a normal pregnancy.

## 3. TREATMENT

| A. Date of first visit. | B. Date of last visit. | C. Date of last examination. | D. Frequency of treatment: ☐ Weekly  ☐ Monthly  ☐ Other   If Other, specify frequency: |
|---|---|---|---|

E. Nature of treatment (including surgery, therapeutic modalities, psychological intervention and medications prescribed, if any):

## 4. PROGRESS

| A. Has Patient:  ☐ Recovered  ☐ Not changed  ☐ Improved  ☐ Retrogressed | B. Is Patient:  ☐ Ambulatory  ☐ Bed-confined  ☐ House-confined  ☐ Hospital-confined |
|---|---|

C. If unchanged or retrogressed, please explain:

| D. Has patient been hospital-confined?  ☐ Yes  ☐ No   From _____ Through _____ | E. If yes, give name and address of hospital. |
|---|---|

## 5. CARDIAC (IF APPLICABLE)

| A. Functional Capacity (American Heart Association):  ☐ Class 1 (No limitation)  ☐ Class 3 (Marked limitation)  ☐ Class 2 (Slight limitation)  ☐ Class 4 (Complete limitation) | B. Therapeutic Class (Activity):  ☐ No restriction  ☐ Marked restriction  ☐ Slight restriction  ☐ Complete restriction  ☐ Moderate restriction | C. Blood Pressure - Last Visit |
|---|---|---|

5a. Do you feel this patient is a good candidate for cardiac rehabilitation?

XGR18/651                                                                                           SLPC 5938  05/00

**6. PHYSICAL IMPAIRMENT** (*As defined in Federal Dictionary of Occupation Titles)

- ☐ Class 1 - No limitation of functional capacity; capable of heavy work* ............................................................... No Restrictions ( 0 - 10%)
- ☐ Class 2 - Medium manual activity* ............................................................................................................................. (15 - 30%)
- ☐ Class 3 - Slight limitation of functional capacity; capable of light work* ............................................................... (35 - 55%)
- ☐ Class 4 - Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity .... (60 - 70%)
- ☐ Class 5 - Severe limitation of functional capacity; incapable of minimum (sedentary*) activity ......................... (75 - 100%)

**7. MENTAL IMPAIRMENT (IF APPLICABLE)**

- ☐ Class 1 - Patient is able to function under stress and engage in interpersonal relations (no limitation).
- ☐ Class 2 - Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitation).
- ☐ Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitation).
- ☐ Class 4 - Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitation).
- ☐ Class 5 - Patient has significant loss of psychological, physiological, personal and social adjustments (severe limitation).

A. Please define stress as it applies to this patient.

B. What stress and problems in interpersonal relations has this patient had at work?

C. Do you believe this patient is competent to endorse checks and direct the use of proceeds thereof?  ☐ Yes  ☐ No

D. What is the patient's current DSM-III-R diagnosis?
Axis I:
Axis II:
Axis III:
Axis IV:
Axis V:

**8. WORK CAPABILITIES**

A. During what period was the patient unable to perform all of the material and substantial duties of his/her OWN OCCUPATION on a full-time basis?
Began _____ Ended _____ or ☐ Not disabled while under my care.

B. Is patient capable of performing all the material and substantial duties of his/her OWN OCCUPATION on a part-time basis? ☐ Yes ☐ No

C. Does patient currently have limitations/restrictions?
Patient's occupation?  ☐ Yes  ☐ No
Any other work?  ☐ Yes  ☐ No

D. Describe specific limitations and restrictions.

**9. PROGNOSIS**

A. When is the patient expected to recover sufficiently to perform duties? Specify date or check applicable recovery period.
Patient's occupation, full-time? _____ or ☐ One Month  ☐ 2-3 Months  ☐ 4-6 Months  ☐ Never
Patient's occupation, part-time? _____ or ☐ One Month  ☐ 2-3 Months  ☐ 4-6 Months  ☐ Never

**10. VOCATIONAL REHABILITATION**

A. Would vocational counseling and/or vocational rehabilitation be recommended? ☐ Yes ☐ No

B. Would job modification enable patient to work with impairment? ☐ Yes ☐ No If yes, how?

**REMARKS**

Name of Attending Physician                Degree/Specialty                Telephone:
                                                                            Fax:

Street Address                City                State                Zip Code

I certify that the above statements are true and complete. I understand that some states require that I be notified that any person, who with intent to defraud or knowing that he is facilitating a fraud, submits an application or files a claim containing a false or deceptive statement may be guilty of a crime.

Attending Physician's Signature* _____ Date _____
*A stamp or signature of a person other than the examining physician is not acceptable.

XGR18/651



**Sun Life Financial**<sup>SM</sup>

Mary T. Kowalski
Sr. Human Resources
Administrator
Human Resources

Sun Life Assurance
Company of Canada
3040
One Sun Life Executive Park
Wellesley Hills, MA 02481-5699

Tel:  781-446-1656
      800-432-1102 ext. 1656
Fax:  781-237-5132
mary.kowalski@sunlife.com

August 1, 2003

Laura Reeder
1 Centennial Drive, #3
Norwood, MA 02062

Dear Laura,

I am writing about your leave of absence.

First of all, since you have been asking questions about our long-term disability plan, I thought you would like to have a copy of our benefits handbook. It is enclosed and has a section about our long-term disability plan. As always, I will be happy to answer any questions you may have about this benefit.

Secondly, I still have not received any medical documentation for your leave of absence that began on May 15, 2003 – either the short-term salary continuance form or the certification of health care provider form. I do expect these forms soon as I know that you have been told by your medical services provider that they have been completed. Since the deadline for receiving these forms was in June, your salary continuance will be stopped until the Attending Physician's Statement and Employee Authorization have been received and your salary continuance has been approved.

Lastly, assuming the Family and Medical Leave Act Certification of Health Care Provider is received and approved, as of today you have used 11 weeks and two days of your annual 12-week entitlement of job-protected leave under the Family and Medical Leave Act.

Please call me if ou have any questions.

Sun Life Assurance Company of Canada
is a member of the Sun Life Financial group of companies.
www.sunlife-usa.com

page 2 of 2
L. Reeder
August 1, 2003

Sincerely,

Mary Kowalski
Senior Human Resources Administrator

electronic copy:
Joyce Teitelbaum


Sun Life Financial℠

Mary T. Kowalski
Sr. Human Resources
Administrator
Human Resources

Sun Life Assurance
Company of Canada
3040
One Sun Life Executive Park
Wellesley Hills, MA 02481-5699

Tel: 781-446-1656
     800-432-1102 ext. 1656
Fax: 781-237-5132
mary.kowalski@sunlife.com

August 11, 2003

Laura Reeder
1 Centennial Dr., #3
Norwood, MA 02062

Dear Laura,

As discussed with you on the telephone last week, your short-term salary continuance has been approved from May 15, 2003 through July 25, 2003.

Although your current leave of absence is unpaid, we will review any additional medical documentation you may provide in support of your full-time leave of absence from July 28 through August 15, 2003.

Additionally, please provide information supporting your return to work on August 18 for five hours per day. I have enclosed a disability form for this purpose.

As of August 6, 2003, you have used the maximum of 12 weeks of job-protected leave time permitted under the Family and Medical Leave Act (FMLA). Accordingly, we may need, at some point, to fill your position. In the event that your job is filled, you may apply for any open positions that may be available at the time you are able to return to work. As discussed with you on the telephone last week, I know of no immediate plan to fill your job.

Please call me if you have any questions.

Sun Life Assurance Company of Canada
is a member of the Sun Life Financial group of companies.
www.sunlife-usa.com

Sincerely,

Mary Kowalski
Senior Human Resources Administrator

electronic copy:
Joyce Teitelbaum



| | Mary T. Kowalski<br>Sr. Human Resources<br>Administrator<br>Human Resources | Sun Life Assurance<br>Company of Canada<br>SC 3040<br>One Sun Life Executive Park<br>Wellesley Hills, MA 02481-5699 |
|---|---|---|
| | | Tel: 781-446-1656<br>     800-432-1102 ext. 1656<br>Fax: 781-237-5132<br>mary.kowalski@sunlife.com |

October 9, 2003

Laura Reeder
1 Centennial Dr., #3
Norwood, MA 02062

Dear Laura,

I am sorry that you continue to experience ongoing health problems.

Based upon the medical records that we recently received, we have approved your short-term salary continuance based upon your current condition. As we have indicated previously, your medical condition is one that can vary in severity. Accordingly, we will need updates on your medical condition, and, to that end, a medical case coordinator from the short-term disability area will be following up on your status at the end of this month.

In order to expedite the processing of your claims, it would be very helpful if you could continue to assist us in obtaining information as quickly, and as efficiently, as possible. As the recipient of health care, you are in the best position to communicate with the health care providers about providing us with the medical information that is necessary to review your eligibility for benefits. In that regard, we have provided you with the forms that are necessary to submit to support your long-term disability claim. We look forward to your ensuring that we receiving these completed forms and necessary information promptly. If you have any questions about what information is necessary, please contact us. I also want to make you aware that the completed medical forms for long-term disability can also be used to make an up-date assessment for purposes of short-term salary continuance.

Our short-term salary continuance program lasts for a total of 26 weeks. You may not be able to return to work soon and you may be eligible to receive long-term disability benefits. In order to ensure a smooth transition to long-term disability compensation, please return the employee and physician sections of the long-term disability claim form to me. I shall then forward those sections, along with the employer section, to the Sun Life Financial employee disability claims area for processing.

Sun Life Assurance Company of Canada
is a member of the Sun Life Financial group of companies.
www.sunlife-usa.com

If you apply for long-term disability benefits, your claim may take a month or longer to process. If we assume you will be exhausting your short-term salary continuance, your 26 weeks under that program will end on November 12, 2003. Monthly long-term disability benefit checks are mailed at the end of the benefit month. Please note this difference as now salary continuance is paid every two weeks, at the end of the pay period.

As you know, you exhausted the maximum 12 weeks of job-protected leave time permitted under the Family and Medical Leave Act on August 6, 2003, more than two months ago, as indicated in one of my earlier letters. The current job position that you hold is one where regular and predictable full-time attendance is an essential function of the job. Therefore, for this and other business reasons, your manager has determined that it is necessary to seek to fill your position at this time. When you are ready to return to work, you may apply for open positions for which you are qualified that may be available at that time.

Please let me know if you have any questions.

Sincerely,

Mary Kowalski
Senior Human Resources Administrator

electronic copy:
Joyce Teitelbaum



Mary T. Kowalski
Sr. Human Resources
Administrator
Human Resources

Sun Life Assurance
Company of Canada
SC 3040
One Sun Life Executive Park
Wellesley Hills, MA 02481-5699

Tel: 781-446-1656
     800-432-1102 ext. 1656
Fax: 781-237-5132
mary.kowalski@sunlife.com

November 3, 2003

Laura Reeder
1 Centennial Dr., #3
Norwood, MA 02062

Dear Laura,

Thank you for sending me your long-term disability application. I received it today and have forwarded the complete application, including the employer section, to our long-term disability area in Portsmouth, New Hampshire.

If your short-term salary continuance continues to be approved, it will end on November 12, 2003. Long-term disability payments would begin after your long-term disability claim is approved and is not paid out in advance of the benefit month. It is paid out at the end of the benefit month.

Future communication about your long-term disability claim will come from our long-term disability department.

Sincerely,

Mary Kowalski
Senior Human Resources Administrator

electronic copies:
Joyce Teitelbaum
Lynn Della Pasqua

Sun Life Assurance Company of Canada
is a member of the Sun Life Financial group of companies.

www.sunlife-usa.com