UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

LAURA REEDER,
Plaintiff

V.

SUN LIFE ASSURANCE COMPANY OF
CANADA, INC.
Defendant

CIVIL ACTION NO. 05-10534-NMG

## MEMORANDUM IN SUPPORT OF SUN LIFE ASSURANCE COMPANY OF CANADA, INC.'S MOTION FOR SUMMARY JUDGMENT

### NATURE AND STATUS OF PROCEEDINGS

In this case, the plaintiff, Laura Reeder ("Ms. Reeder"), seeks to recover payment of

long-term disability benefits under an employee welfare benefit plan ("the Plan"), provided by

her employer, Sun Life Assurance Company of Canada (U.S.) ("Sun Life U.S."), and funded by

a group insurance policy ("the Policy") issued by Sun Life Assurance Company of Canada ("Sun

Life").[1] Both parties agree this case is governed by the Employee Retirement Income Security

Act ("ERISA"), 29 U.S.C. §1001 et. seq.

In October 2003, Ms. Reeder filed a claim for long-term disability benefits. On

December 9, 2003, Sun Life denied Ms. Reeder's claim because she did not satisfy the eligibility

requirements of her Plan as she had failed to prove continued total disability during the

Elimination Period due to Crohn's Disease or provide proof of continued treatment for anxiety.

Although not submitted within the 180 day appeal period, Ms. Reeder appealed Sun Life's

---

[1]     Sun Life (U.S.) and Sun Life are two separate subsidiaries of Sun Life Financial, Inc.

decision on September 10, 2004. After reviewing the additional documentation submitted and subjecting the entire file to an additional medical review, Sun Life upheld its decision on appeal.

Having exhausted her administrative remedies, Ms. Reeder then filed this action, claiming that Sun Life's denial of her claim for LTD benefits violated ERISA. The parties have filed an agreed upon Administrative Record with the Court. Because a review of the Administrative Record reveals that Sun Life's decision in Ms. Reeder's claim for benefits was not arbitrary and capricious, Sun Life has moved for summary judgment on Ms. Reeder's claim under ERISA.[2] Sun Life submits this Memorandum, the Statement of Undisputed Facts, and the Administrative Record ("AR") in support of its Motion for Summary Judgment.

STATEMENT OF UNDISPUTED FACTS

Sun Life incorporates by this reference its Statement of Undisputed Facts, prepared pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 and filed contemporaneously with this Memorandum.

ARGUMENT

I.    STANDARD OF REVIEW

A.    The Plan Grants Sun Life Discretionary Authority.

The arbitrary and capricious standard of review applies to Sun Life's decision on Ms. Reeder's claim under the Plan. "The Supreme Court has held that a denial of benefits under 29 U.S.C. §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or

---

[2]    "[I]n an ERISA case where review is based only on the administrative record before the plan administrator and is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue. This means the non-moving party is not entitled to the usual inferences in its favor. When there is no dispute over plan interpretation, the use of summary judgment in this way is proper regardless of whether our review of the ERISA decision maker's decision is de novo or deferential." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005)(internal citation omitted).

to construe the terms of the Plan.'" Orndorf v. Paul Revere Life Ins. Co., 404 F.3d at 516,

*quoting* Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114 (1989). The question,

therefore, is whether the Plan grants Sun Life discretionary authority.

An ERISA plan need not contain the words "discretion" or employ certain "magic words"

or a particular linguistic template in order to endow an administrator with discretionary authority.

Wildbur v. Arco Chemical Co., 974 F.2d 631, 637 (5th Cir. 1992) (no "magic words" required to

trigger deferential standard of review); Kiley v. Travelers Indemnity Co. of Rhode Island, 853 F.

Supp. 6, 10 (D. Mass. 1994); McLain v. Metropolitan Life Ins. Co., 820 F. Supp. 169, 174 (D.

N.J. 1993). Instead, it need only appear on the face of the Plan documents that the fiduciary has

been "given the power to construe disputed or doubtful terms" or to resolve disputes over

benefits eligibility. Rodriguez-Abreu v. Chase Manhattan Bank, 986 F.2d 580, 583 (1st Cir.

1993).

The Plan provides Sun Life with the discretionary authority to determine benefit

eligibility. Specifically, the Plan provides that in order to receive long-term disability benefits

proof of claim must be given to Sun Life. The Plan further provides that "proof must be

satisfactory to Sun Life." (AR-0027). Although the First Circuit has not specifically addressed

whether this language is sufficient to convey the requisite discretion to Sun Life, in Brigham v.

Sun Life of Canada, 317 F.3d 72, 82 (1st Cir. 2003), the First Circuit indicated that, if called upon

to do so, it would follow the "widespread acceptance of the view that [this language] triggers

discretionary review."

The District Courts in Massachusetts have held that plan language requiring that evidence

of proof be "satisfactory to us" conveys the requisite discretionary authority to warrant review of

a benefits decision under an arbitrary and capricious standard. *See* Depardo v. MFS/Sun Life

Fina. Distr. Inc., 2005 U.S. Dist. LEXIS 9777, *13 (D. Mass. 2005) ("Must be satisfactory to

Sun Life" is language sufficient to confer discretionary authority on the plan administrator.);

Brigham v. Sun Life of Canada, 183 F. Supp. 2d 427, 435 (D. Mass. 2002)(the phrase

"satisfactory to us" clearly grants to Sun Life discretionary authority over eligibility decisions.);

Metropolitan Life Ins. Co. v. Socia, 16 F. Supp. 2d 66, 69 (D. Mass. 1998)("all proof must be

satisfactory to us" sufficient to convey discretionary authority.); Miller v. Wang Laboratories,

Inc., 998 F. Supp. 78, 80 (D. Mass. 1998)(Plan language requiring that proof of claim be

"satisfactory to us" conferred necessary discretion to require that the Court review the denial of

benefits under the arbitrary and capricious standard); Guarino v. Metropolitan Life Ins. Co., 915

F. Supp. 435, 444 (D. Mass. 1995)(Plan language requiring that "all proof of claim must be

satisfactory to the Insurance Company" granted sufficient discretionary authority to warrant the

arbitrary and capricious standard of review).

Therefore, the Plan gives Sun Life sufficient discretionary authority to warrant

application of the arbitrary and capricious standard of review.

B.    Sun Life's Decision To Deny Benefits Must Be Upheld
      Unless It Is Found To Be Arbitrary and Capricious.

"When a Plan Administrator has discretion to determine an applicant's eligibility for

benefits, such as here, the administrator's decision must be upheld 'unless arbitrary, capricious,

or an abuse of discretion.'" Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 29-30

(1st Cir. 2001), quoting Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183 (1st Cir. 1998).

The "arbitrary and capricious" standard is the "least demanding form of judicial review" and

requires only that determinations be "rational in light of the plan's provisions" as well as

"reasonable" with "no abuse of discretion." Guarino, 915 F. Supp. at 444, citing Perry v. United

Food & Commercial Workers District Unions 405 and 442, 64 F.3d 238, 242 (6th Cir. 1995) and

Firestone, 489 U.S. at 111. "This standard means that the administrator's decision will be upheld

if it is reasoned and 'supported by substantial evidence in the record.'" Vlass, 244 F.3d at 30,

*quoting* Doyle, 144 F.3d at 184. "Evidence is 'substantial' if it is reasonably sufficient to

support a conclusion." Id. "Moreover, the existence of contradictory evidence does not, in itself,

make the administrator's decision arbitrary." Id. (reversing grant of summary judgment to

plaintiff where, on conflicting evidence, plan administrator's decision to discontinue total

disability benefits could not be said to be arbitrary and capricious).

 The Court's role is limited to determining whether the fiduciary's interpretation was

made rationally and in good faith, not whether it was right. Brigham, 317 F.3d at 85; Guy v.

Southeastern Iron Workers' Welfare Fund, 877 F.2d 37, 39 (11th Cir. 1989). The decision

should be upheld even if the Court disagrees with it so long as the interpretation is rationally

related to a valid plan purpose and not contrary to the plain language of the plan. Moats v.

United Mine Wkrs. Of America, 981 F.2d 685, 688 (3rd Cir. 1992). Any questions of judgment

are left to the administrator. Pokratz v. Jones Diary Farm, 771 F.2d 206, 209 (7th Cir. 1985).

An ERISA plan's trustee's decision to deny benefits will be deemed an abuse of discretion only

if it is extremely imprudent or extremely unreasonable. Lickteig v. Business Men's Assur. Co.

of America, 61 F.3d 579, 583 (8th Cir. 1995).

 Thus, Sun Life's decision on Ms. Reeder's LTD claim will be reversed only if the

"eligibility determination was unreasonable in light of the information available to" Sun Life.

Cook v. Liberty Life Assurance Co., 320 F. 3d 11, 19 (1st Cir. 2003).

## II. MS. REEDER CANNOT PREVAIL ON HER LONG-TERM DISABILITY CLAIM.

 To prevail in her long-term disability claim, Ms. Reeder must demonstrate, based on the

evidence in the Administrative Record, that: (1) Sun Life's decision that she was not disabled as

defined by the Plan after July 28, 2003 was arbitrary and capricious; and (2) "because of a sickness she remained unable to perform all of the material and substantial duties of [her] own occupation." (AR-0009). The burden of proof is on Ms. Reeder. See Orndorf, 404 F.3d at 519; Brigham, 317 F.3d at 84-85; Terry v. Bayer, 145 F.3d 28, 34 (1st Cir. 1998). Ms. Reeder cannot clear either of these hurdles.

A.    Sun Life's Decision That Ms. Reeder Was Not Totally Disabled After July 28, 2003 Under The Terms Of The Plan Was Reasonable And Supported By Substantial Evidence In The Administrative Record.

Sun Life's determination that Ms. Reeder was not totally disabled after July 28, 2003 and therefore failed to satisfy the Elimination Period as required by the Plan was reasonable and supported by substantial evidence in the Administrative Record, which established that: 1) Ms. Reeder worked in a sedentary occupation, which permitted her to sit throughout the day and provided her with ready access to the restroom facilities; 2) On July 28, 2003, Ms. Reeder's treating physician stated that she was capable of returning to full-time work and nothing in the medical records showed any change in her condition that would prevent her from performing the duties of her occupation from July 28, 2003 through November 10, 2003; 3) Dr. Taitelbaum's change in classification from "no limitations" on July 28, 2003 to "severe limitations" in October 2003 was based on Ms. Reeder's subjective self assessment that she did not "feel" she could return to work; 4) Ms. Reeder failed to produce any records of ongoing psychiatric treatment for her anxiety and panic attacks during the Elimination Period; and 5) Sun Life's three medical evaluations determined that there was no evidence in the medical records of any change in Ms. Reeder's condition that would warrant a finding of total disability.

Under the Plan, in order to qualify for total disability benefits, a claimant has to show that because of Injury or Sickness she is unable to perform all of the material and substantial duties of her own occupation. To qualify for LTD benefits the employee must:

1.    Satisfy the Elimination Period with the required days of Total or Partial Disability;

2.    Provide proof of continued Total or Partial Disability; and

3.    Have regular and continuing care by a physician who provided appropriate treatment by means of examination and testing in accordance with the disabling condition.

(AR-0009).

The Elimination Period means a period of 180 continuous days of total or partial disability for which no LTD benefit is payable. (AR-0003, 0008). When Ms. Reeder submitted her LTD claim in October 2003, she had not worked full-time since May 15, 2003. Therefore, order to satisfy the Elimination Period, Ms. Reeder must prove that she was unable to perform all of the material and substantial duties of her occupation through November 10, 2003 and provide proof of regular and continuing care before any disability benefits are due.

In May 2003, Ms. Reeder was employed by Sun Life U.S. as a Research/Adjustment Analyst. In the Employer's Statement, Sun Life U.S. identified the physical requirements of Ms. Reeder's occupation. (AR-0216C). Based on the definition of sedentary work in the Dictionary of Occupational Titles (DOT) published by the Department of Labor (AR-0398), Sun Life reasonably concluded that Ms. Reeder's occupation was a sedentary position. (AR-0398).

Upon receipt and evaluation of Ms. Reeder's LTD claim, Sun Life reasonably determined that Ms. Reeder was not totally disabled as defined by the Policy after July 28, 2003. Ms. Reeder had been able to work in her sedentary position despite her Crohn's Disease for many

years and there was no evidence of a change or complication in her medical condition that would have prevented her from returning to work after she had recovered from her gallbladder surgery.

In the APS submitted in connection with Ms. Reeder's LTD claim, Dr. Taitelbaum lists Ms. Reeder's disability as "Crohn's Disease, anxiety." (AR-0226). Dr. Taitelbaum described Ms. Reeder's physical impairment as a Class 5-severe limitation functional capacity, as well as a Class 5 mental impairment with significant loss of psychological adjustments. (AR-0227-28). Dr. Taitelbaum also states on the APS that Ms. Reeder can stand/walk for 1-4 hours, sit for 3-5 hours, and drive 1-3 hours each day, and can lift approximately 15 pounds. However, with respect to Ms. Reeder's work capabilities, Dr. Taitelbaum merely stated that "she says she cannot work again." In terms of vocational rehabilitation, Dr. Taitelbaum again states that "patient says she cannot work." (Id.).

However, the APS Dr. Taitelbaum completed on July 28, 2003 painted an entirely different picture. In this July 28, 2003 APS, Dr. Taitelbaum stated that Ms. Reeder had recovered from the cholecystectomy and described Ms. Reeder's Physical Limitations as a Class 3, slight limitation due to Crohn's Disease and no mental limitations. Dr. Taitelbaum also indicated that Ms. Reeder had no restrictions or limitations from her occupation and was capable of returning to full-time work. (AR-0070-71).

Upon receipt of Ms. Reeder's claim, Sun Life reviewed and evaluated all of the medical records it received from her treating physician, Dr. Taitelbaum, to determine what changed between July 28, 2003 and October 2003 to render Ms. Reeder totally disabled. Those records revealed no change in her medical condition that would support a switch from no mental limitations to severe mental limitations and from a slight physical limitation due to Crohn's Disease to a severe physical limitation. The records showed that Ms. Reeder had an 18 year

history of Crohn's Disease prior to her claim for disability, for which she received bimonthly

infusions of Remicade and saw Dr. Taitelbaum once a month. (AR-0217). On May 15, 2003,

Ms. Reeder complained of severe abdominal pain and was later diagnosed with gallstones. (AR-

0210-06). Despite the problems associated with her gallbladder, Mr. Reeder had no change in

her bowel habits. (AR-0199). Ms. Reeder underwent an open cholecystectomy on May 31, 2003

to remove her gallbladder. (AR-0194). Due to the surgery, Ms. Reeder had to discontinue her

Remicade treatments. As a result, she began experiencing some rectal inflammation. (AR-0191).

After a normal CT scan, Ms. Reeder started receiving Remicade infusions again in July 18, 2003.

(AR-0185).

On July 23, 2003, Mr. Reeder contacted Dr. Taitelbaum's office and requested an

appointment because she was "being advised by people to go on disability." (AR-0183).

Dr. Taitelbaum then completed the APS stating that she could return to full-time work with no

restrictions. The next day Ms. Reeder told Dr. Taitelbaum that she was "not sure about whether

she wants to return to work" and would let her know. However, despite this statement

Dr. Taitelbaum told Ms. Reeder that she could contact her nurse "to get her can go back to work

note." (AR-0181). Ms. Reeder then returned to work part-time from August 25, 2003 through

September 18, 2003. (AR-0216A).

On September 23, 2003, Ms. Reeder had an office visit with Dr. Taitelbaum where she is

described as crying and stated that "she need[s] to apply for complete disability" due to

"embarrassment when she loses bowel movements at work, multiple missed days, the need for

frequent appointments and medications, anxiety, panic attacks on the inability to concentrate."

(AR-0174). While Dr. Taitelbaum noted that "Ms. Reeder has severe anxiety and depression,"

she noted no change in her mental status. (AR-0175). While Ms. Reeder listed the need for

frequent appointments and medications as one of her reasons for needing to go on total disability, in 2003 Ms. Reeder was receiving her Remicade infusion once every 2 months and seeing Dr. Taitelbaum once a month. (AR-0235).

Dr. Taitelbaum's September 23, 2003 notes do not reflect any change in Ms. Reeder's physical or mental condition other than Ms. Reeder's desire not to return to work. (AR-0174-75, 0235). What Dr. Taitelbaum did note was that Ms. Reeder "feels she cannot go back to work" and that she "would be as supportive as possible about Ms. Reeder's attempt to have complete disability." (Id.) Based on this medical evidence, it was reasonable for Sun Life to conclude that Dr. Taitelbaum's second APS was based on Ms. Reeder's subjective desire not to return to work instead of an objective medical change in her condition that would render her unable to perform the material and substantial duties of her occupation.

Sun Life also reasonably concluded that there was insufficient evidence to support a claim for total disability due to anxiety or panic attacks. On September 24, 2003, Ms. Reeder was seen for individual psychotherapy with Suzanne Sayle, RN., whose office records reflect that Ms. Reeder had tried to return to work but lost bowel control several times, which increased panic attacks making work very hard. (AR-0234). However, this office note also states that Ms. Reeder planned to look into volunteer work and was encouraged to join Curves, a women's gym. (Id.). This is the first and only record of any treatment for Ms. Reeder's alleged mental health issues in the medical records submitted during the underlying claim or on appeal. There is no evidence in this record any change in Ms. Reeder's condition between July 28 and October 2003 that would justify a change in her mental limitations from "no limitations" to "severe." The only thing that changed was Ms. Reeder's desire to return to work.

As part of Sun Life's evaluation of Ms. Reeder's claim, William Watson, M.D. reviewed the claim file and medical records. (AR-0245-47). Dr. Watson determined that in July 2003 "Dr. Taitelbaum felt that the claimant had returned to a preoperative capability and was capable of full-time employment." (AR-0246). He also observed that subsequent clinic notes of Dr. Taitelbaum describe the claimant crying and complaining of incontinence, however, the examinations during August and September did not reveal any abnormality in the abdomen or rectum. A CT scan performed on July 8, 2003 showed "no evidence of active disease or abscess," which "indicates no evidence of an exacerbation of her Crohn's Disease and that there was no problem with continuance or capacity at that examination." Although the claimant has Crohn's Disease, she had normal physical examinations, no disturbance of sleep, normal BMI, normal CT and blood work. Although the October 2, 2003 APS lists anxiety as a cause for the disability, there is no mental assessment other than the statement of anxiety in the medical records. (AR-0246). Dr. Watson concluded that nothing changed in the patient's condition after July 2003 that would support a change in this prognosis.

Dr. Watson determined that there is no evidence to support a claim of total disability, and no restrictions or limitations, other than reasonable access to toilet facilities. (AR-0246).

Dr. Watson's opinion is supported by the December 8, 2003 review by Mary E. Moran-Higgins, RN, POS. (AR-0249). After reviewing the available medical evidence in the file, Ms. Moran-Higgins concluded that the available medical records in the file through September 24, 2003 did not support a Class 5 physical impairment, and that while Ms. Reeder's alleged disability is Crohn's Disease plus anxiety there does not appear to be a record of any mental evaluations or treatment for this anxiety.[3] (Id.).

---

[3]    To qualify for disability benefits an employee must have "regular and continuing care" by a physician who provides "appropriate treatment." (AR-0007).

On December 9, 2003, Sun Life denied Ms. Reeder's claim for total disability benefits and explained the basis of its opinion. (AR-0251-54). Sun Life's decision that there was no evidence to justify a claim of total disability due to Crohn's Disease and/or anxiety was reasonable and supported by substantial evidence in the record.

Although not submitted within the 180-day time period, Ms. Reeder appealed Sun Life's decision and submitted additional information. None of the new medical information pertained to the time period between May and November 10, 2003.

In support of her appeal, Ms. Reeder submitted several forms that she had submitted to SSDI in 2004, which were completed by Suzanne Sayles, RN and Dr. Richard Morrill. These forms included a one paragraph note dated August 12, 2004 stating that Ms. Reeder received care for her symptoms of depression and anxiety and uncontrolled Crohn's Disease (AR-0272); a psychiatric functional capacity questionnaire dated February 2004 (AR-0277-79); a mental functional capacity assessment ("MCFA") dated February 9, 2004 (AR-0280-0282); and a functional capacity questionnaire completed by Dr. James Kaufman dated January 2004. (AR-0273). However, all of these forms and notes were from 2004. None of them shed any light or produce any evidence that Ms. Reeder was totally disabled by her anxiety and panic attacks between July 28, 2003 and November 10, 2003 in order to satisfy the Elimination Period. Moreover, while the August 12, 2004 note states that Ms. Reeder receives care for her symptoms of depression and anxiety, not a single medical record was submitted, other than the September 24, 2003 note, evidencing any ongoing care or treatment during the relevant time period. Further, Ms. Sayles reference to "poorly controlled" Crohn's Disease is contradictory to Dr. Taitelbaum's office note of a week earlier where she stated that Ms. Reeder's Crohn's Disease was "asymptomatic" and "under reasonably good control." (AR-0307).

Upon receipt additional information during Ms. Reeder's appeal, Sun Life had the entire file reviewed by a third physician, Dr. B.W. Hall on February 15, 2005. (AR-0393-96). Dr. Hall concluded that there was no evidence of any specific complications attributable to the May 31, 2003 surgery that would have prevented Ms. Reeder from returning to work. He notes that she did continue to have loose bowel movements of varying frequency, however, it did not appear to him that the frequency or character of these bowel movements had changed significantly in the 6 to 8 weeks post-operatively. (AR-0394). Ms. Reeder had an uneventful post-operative recovery from her May 31, 2003 surgery and Dr. Hall "could find no specific evidence in a change in the clinical condition of the claimant in the period from July-August-September of 2003 compared to the pre-cholecystectomy period prior to May 2003, either with regard to a change in her bowel movements or a change in her symptoms or complaints." (Id.). As a result, he did not see any change in the claimant's medical picture after the May 31, 2003 surgery that would support her ceasing work altogether. (Id.).

Although Dr. Hall acknowledged that the claimant does have Crohn's Disease and is symptomatic, her Crohn's Disease appears to be stable from a symptomatic and clinical point of view in the timeframe beginning in May 2003 through September of 2004. (Id.). Her numerous and frequent visits to the various doctors, although frequently unrelated to her Crohn's Disease, as well as her own claims that she is looking into volunteer work and attending Curves (a health club), indicate in Dr. Hall's opinion that the claimant is or should be capable at the very least of sedentary work activities if not light work activities on at least a part-time basis. (AR-0396). Although what appears to be the most incapacitating for the claimant are her frequent bowel movements, Dr. Hall notes that in reviewing her physical examinations, Ms. Reeder's weight has remained largely unchanged at about 150 pounds. (Id.). In Dr. Hall's experience, "patients with

active, symptomatic Crohn's Disease are struggling to maintain their weight and are generally

losing weight and most of them tend to be down to 100 to 110 lbs." (Id.).

Based on the evidence in the previous denial, as well as Dr. Hall's medical review, Sun

Life upheld its decision to deny Ms. Reeder's claim for long-term disability benefits and in its

appeal denial letter dated March 1, 2005, Sun Life explained the reasons for its decision. (AR-

0397-401).

Sun Life's decision that Ms. Reeder had failed to prove that she was totally disabled after

July 28, 2003 is supported by substantial evidence in the Administrative Record.  During the

claim and appeal process, Ms. Reeder was given every opportunity to submit additional medical

information.  Sun Life sought the opinions of three medical personnel with respect to

Ms. Reeder's claim.  Each one reviewed the available medical information and found no

evidence of a change in Ms. Reeder's condition that would warrant a claim for disability.  There

is substantial evidence in the Administrative Record to support Sun Life's decision.  As such,

Sun Life's decision to deny Ms. Reeder's claim for benefits was not arbitrary and capricious.

The fact that Sun Life relied on the opinions of its medical consultants to determine that

Ms. Reeder was not totally disabled after July 28, 2003 does not mean that its decision is

arbitrary and capricious.  Gannon v. Metropolitan Life Insurance Co., 360 F.3d 211, 214 (1st Cir.

2004)(a non-examining physician's review of a claimant's file is reliable medical evidence);

Brigham v. Sun Life of Canada, 183 F. Supp. 2d 427, 437 (D. Mass. 2002), affirmed 317 F. 3d

73 (1st Cir. 2003)(denial upheld based on medical consultants opinion); Lopes v. Metropolitan

Life Ins. Co., 332 F.3d 6 (1st Cir. 2002)(reliance on medical consultants opinions justified

although contradictory to treating physician); Doyle v. Paul Revere Life Ins. Co., 144 F. 3d 181,

184 (1st Cir. 1998)(although conflicting medical evidence, defendant's denial upheld where it relied on opinions of medical consultants).

The mere fact that Sun Life reached a decision contrary to the opinions of Ms. Reeder's physician's, when Sun Life based its decision on substantial evidence in the record, including the opinions of its in-house medical reviewers, does not mandate a conclusion that the denial was arbitrary. See Brigham, 183 F. Supp. 2d at 437; Chandler v. Raytheon Employees Disability Trust, 53 F. Supp. 2d 84, 91 (D. Mass. 1999)("The fact that contrary medical assessments by [Ms. Reeder's] treating physicians exist does not" make reliance by a plan administrator on medical assessments of its own doctor or medical review by another doctor, among other things, in determining that he was not disabled from any occupation, arbitrary and capricious).

B.    Ms. Reeder Has Not Demonstrated That She Was Totally Disabled
      After July 28, 2003.

Ms. Reeder claims that Sun Life's decision was arbitrary and capricious and that Sun Life should have approved payment of total disability benefits. Ms. Reeder bears the burden of proving that she is entitled to benefits under the Policy. See Brigham, 317 F.3d at 84-85; Terry v. Bayer, 145 F.3d 28, 34 (1st Cir. 1998). The evidence in the Administrative Record reveals that Ms. Reeder cannot sustain her burden of proof for each of the following reasons:

In order to qualify for benefits under the Policy, Ms. Reeder must first satisfy the Elimination Period in the Policy. To do so, Ms. Reeder must prove that due to injury or sickness she is unable to perform all the material and substantial duties of her sedentary occupation from May 15, 2003 when she left her job, through November 10, 2003 when the Elimination Period expired. (AR-0003-0008). And, she must provide proof of regular and continuing care by a physician who provided appropriate treatment for the disabling condition. (AR-0013). Ms.

Reeder has failed to show evidence of continuing total disability after July 28, 2003 for her Crohn's Disease or proof of continuing care and appropriate treatment for her alleged anxiety.

The evidence submitted by her own physician does not support Ms. Reeder's claim for disability. Ms. Reeder was able to work with Crohn's Disease for 18 years before her disability claim. The only change in her medical condition before her claim was gallbladder surgery, which occurred on May 31, 2003. The July 28, 2003 APS completed by Dr. Taitelbaum stated that Ms. Reeder had fully recovered from her gallbladder surgery; had no mental impairment and was able to function under stress and engage in interpersonal relations. Dr. Taitelbaum further stated that Ms. Reeder had only a slight limitation due to her Crohn's Disease and was capable of light work. (AR-0170). A July 8, 2003 CT scan revealed no exacerbation of her Crohn's Disease and was sufficient to warrant continuation of Ms. Reeder's Remicade treatments.

Then after unremarkable visits in August and September, Dr. Taitelbaum completed a second APS on October 2, 2003, in which her classification of Ms. Reeder changed from Class 1 no mental limitations to Class 5 – significant loss of psychological adjustments, and from Class 3 slight physical limitations due to Crohn's Disease to a Class 5 – incapable of sedentary activity. (AR-0227). As a basis for this drastic change, Dr. Taitelbaum merely states that "she feels she needs complete disability" and "she says she cannot work again." However, the medical records submitted show no evidence of any change in Ms. Reeder's physical condition that would justify this change in prognosis. To the contrary, the records clearly reflect that what changed was Ms. Reeder desire to return to work and Dr. Taitelbaum's intention to support her decision rather than objectively confirm an ongoing disability. (AR-0181). Therefore, the medical records submitted by Ms. Reeder's own physician failed to provide any proof of total disability.

When Ms. Reeder appealed Sun Life's decision to deny her claim, she still did not provide any records of treatment for her alleged anxiety. Ms. Reeder instead points to instances in the records from 2002 when Dr. Taitelbaum noted the existence of panic attacks and heart palpitations. (AR-0262). None of these notations reflect mental health treatment for anxiety or would warrant a finding of total disability due to anxiety and panic attacks. Furthermore, Ms. Reeder was working in her occupation full-time during 2002 when she was allegedly having these panic attacks.

None of the other materials submitted with her appeal prove that she was unable to perform the material and substantial duties of her occupation from July 28, 2003 through November 10, 2003. Ms. Reeder submitted a November 19, 2003 letter from the Senior Human Resources Administrator at Sun Life (U.S.), Mary Kowalski, which she claims establishes that her employer did not consider her able to perform the essential duties of her job. (AR-0261). However, in the November 19, 2003 letter, Ms. Kowalski states that Ms. Reeder "may resume [her] job position (provided its not filled) or post for other positions." Ms. Reeder's manager, Ralph Milliken indicated that while Ms. Reeder was working part-time she had "stopped performing the complex financial analysis assignments that are the main focus of [her] job position, and instead [ ] only primarily performed more menial tasks such as storage and retrieval of microfilm records.' (AR-0271B). Because Ms. Reeder was not performing her job duties Mr. Milliken did not believe this type of schedule/work assignment could be allowed on a long-term basis. (Id.). The letter does not state that Mr. Milliken thought Ms. Reeder was unable to do her job, only that she was not doing all of her duties during the time she was working part-time.

Ms. Reeder also submitted some of the materials she sent to SSDI in 2004. She submitted a one paragraph August 12, 2004 note from Dr. Richard Morrill and Suzanne Sayle,

RN, which states that Ms. Reeder receives care for her symptoms of depression and anxiety related to her Crohn's Disease and her claimed inability to predict her need to use the bathroom. He states that her anxiety further complicates her ability to follow directions and engage in conversations in a confident manner and that the stress often exacerbates her Crohn's Disease, intensifying her symptoms. (AR-0272). However, this note completely contradicts the MFCA, also completed by Dr. Morrill and Nurse Sayles on February 9, 2004, which clearly states that Ms. Reeder had no limitations with respect to her ability to carry out instructions (simple and detailed) and work in coordination with others. Moreover, this note is from 2004 and although it refers to treatment, no additional records of any mental health treatment were submitted.

Ms. Reeder submitted a functional capacity questionnaire, which was part of her application for SSDI. (AR-0273). This questionnaire was completed in January 2004 by Dr. John M. Kaufman, a gastroenterologist. He states that Ms. Reeder is unable to tolerate even low stress jobs due to her severe anxiety and panic attacks. However, he also states that Ms. Reeder can sit and stand for 1-2 hours and that she would need a job that would permit ready access to a restroom. He states that she would need to take hourly restroom breaks that would require her to be away from her workstation for an average of 10 minutes and that she may only have 2 minutes of advanced notice of her need to take the restroom break. Dr. Kaufman concludes that "the patient's primary limitation is her severe anxiety and panic attacks, along with frequent diarrhea associated with cramping." (AR-0276). This form too was completed in 2004 and states that the reason she cannot work is due to anxiety and panic attacks. However, Dr. Kaufman also does not supply any evidence of treatment for anxiety or panic attacks during the Elimination Period that would justify a finding of total disability.

Nurse Suzanne Sayle, a psychiatric nurse also completed a psychiatric functional capacity questionnaire in connection with Ms. Reeder's application for SSDI in February, 2004. (AR0277-0279). Ms. Sayle lists Ms. Reeder's diagnosis as a panic disorder due to her Crohn's Disease. She states that Ms. Reeder's anxiety and panic attacks began in the 80's and that her panic has been exacerbated by her Crohn's Disease. Due to her Crohn's Disease Ms. Reeder is both depressed and often anxious because of her inability to predict the need to go to the bathroom and her lack of control over her bowels. She states that she has been unable to function outside of the highly structured living setting for more than two years. However, Ms. Reeder worked full-time at Sun Life for a year and a half of the two years Nurse Sayle claims Ms. Reeder had been unable to function outside of a structured living setting.

Ms. Sayle further states that Ms. Reeder is currently undergoing psychotherapy and is being seen at least once a month and more frequently when necessary. However, not a single medical record of this alleged treatment was submitted. This blanket statement is insufficient to establish proof of continuing care and appropriate treatment under the policy. Moreover, it was completed in 2004 and makes no reference to treatment or care during the Elimination Period from May through November of 2003.

Ms. Reeder also submitted MFCA completed by Susanne Sayles, RN on February 9, 2004 in connection with her application for SSDI. (AR-0280-0282). In this assessment, Ms. Sayle reported certain limitations Ms. Reeder had because of her need to take frequent restroom breaks. (AR-0280-0281). However, Ms. Sayle also reported on the MFCA form that Ms. Reeder had no limitations with respect to her understanding and memory; ability to carry out instructions (simple and detailed); sustain ordinary routine without supervision; work in coordination with

others; make simple work related decisions; ask questions or request assistance; and accept instructions and respond appropriately to criticism. (AR-0281).

The additional medical records Ms. Reeder submitted for the period of September 2003 through September 22, 2004 also do not support Ms. Reeder's claim of total disability. (AR-0272).

On January 24, 2004, Dr. John Kaufman noted that Ms. Reeder told him she had 6 to 8 loose to soft bowel movements daily, and in a rare occasion up to 15 times a day. She has instances of incontinence on average two times a week. (AR-0374). This note contradicts Dr. Kaufman's questionnaire also submitted with her appeal that claimed Ms. Reeder would require hourly bathroom breaks. (AR-0275). On April 13, 2004, Dr. Taitelbaum's records indicate that Ms. Reeder is experiencing "intermittent" symptoms due to Crohn's Disease but there is no change in her appetite or weight. (AR-0340). During her June 17, 2004 appointment, Dr. Taitelbaum noted that Ms. Reeder's condition was "relatively stable" and she looks well. (AR-0318-0319). On August 3 and 5, 2004, Dr. Taitelbaum noted that Ms. Reeder was doing well and was asymptomatic. Her weight was also unchanged. Ms. Reeder's Crohn's Disease "was under reasonably good control" and Ms. Reeder had discontinued her Remicade treatments in April 2004 but was starting them again. (AR-0307). These records establish that, consistent with the opinions of Drs. Watson and Hall, that Ms. Reeder has had no exacerbation of her long-standing Crohn's Disease that would make her unable to perform all of the material and substantial duties of her occupation.

Therefore, based on the Administrative Record, Ms. Reeder has not sustained her burden of proving that she was continually totally disabled after July 28, 2003 through November 11, 2003 and therefore no benefits are due under the policy.

## CONCLUSION AND RELIEF REQUESTED

For the forgoing reasons, Sun Life's decision to deny benefits after July 28, 2003 was

reasonable and supported by the substantial evidence in the Administrative Record.  Sun Life

requests that this Court enter summary judgment on its behalf.

SUN LIFE ASSURANCE COMPANY OF
CANADA, INC.

By its attorney,


/s/ Kristina H. Allaire
Joan O. Vorster, Esq., BBO #550375
Kristina H. Allaire, Esq., BBO #646001
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502


Dated: June 28, 2006


## CERTIFICATE OF SERVICE

I hereby certify that this document(s), filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants on June 28, 2006.

/s/ Kristina H. Allaire
Kristina H. Allaire, Esq.

Dated: June 28, 2006