UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10534-RWZ

LAURA REEDER

v.

SUN LIFE ASSURANCE COMPANY OF CANADA, INC.,


MEMORANDUM OF DECISION AND ORDER

July 24, 2007

ZOBEL, D.J.

Plaintiff Laura Reeder ("Reeder") seeks review of the denial of her disability claim by defendant Sun Life Assurance Company of Canada, Inc. ("Sun Life"). For the reasons discussed below, I find that Sun Life's denial of benefits was not arbitrary and capricious and therefore allow defendant's motion for summary judgment and deny plaintiff's corresponding motion.

I.      Procedural History

In October 2003, Reeder, then an employee of Sun Life Financial Distributors, Inc. ("SLFD"), applied for long-term disability benefits under a benefit plan offered by her employer. Defendant Sun Life is the claims administrator for the plan.[1] Sun Life denied Reeder's application both initially and on appeal.

_____

[1] Plaintiff's former employer (identified by plaintiff as "Sun Life Financial Distributors, Inc." and by defendant as "Sun Life Assurance Company of Canada (U.S.)") and defendant Sun Life are both wholly-owned subsidiaries of a common publicly held company, Sun Life Financial Inc. (See Docket ## 4-5, 20.)

On March 21, 2005, plaintiff filed a complaint in this court against her former employer (later amended to substitute Sun Life as defendant), alleging that: (1) the denial of benefits was arbitrary and capricious in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829, as amended, 29 U.S.C. § 1132(a)(1)(B); and (2) defendant acted in bad faith and thus breached its fiduciary duty to conduct a fair and complete evaluation of her claim.

A motion by plaintiff to enlarge the administrative record with copies of correspondence from her former employer was denied by Judge Nathaniel Gorton on April 28, 2006.[2]

The parties have now filed cross-motions for summary judgment to be decided on the basis of the administrative record.

II.    **Standard of Review**

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a <u>de novo</u> standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). Where the administrator has such discretion, "a deferential 'arbitrary and capricious' standard of review" applies. <u>Leahy v. Raytheon Co.</u>, 315 F.3d 11, 15 (1st Cir. 2002) (internal citations omitted). This review for arbitrariness is ordinarily made on the record before the administrator at the time of its decision. <u>Liston v. Unum Corp. Officer Severance</u>

---

[2] The case was initially assigned to Judge Gorton, however, he recused himself in November 2006. (<u>See</u> Docket # 31.)

Plan, 330 F.3d 19, 23 (1st Cir. 2003).  The administrator's decision will be upheld
where it is "reasoned and 'supported by substantial evidence in the record.'"  Doyle v.
Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir 1998) (quoting Associated
Fisheries of Maine, Inc. v. Daley, 127 F.3d 104, 109 (1st Cir.1997)).  Substantial
evidence does not require that there be no contradictory evidence, only that the
evidence is sufficient to reasonably support the administrator's conclusion.  Doyle, 144
F.3d at 184.

　　　　Here, the policy terms state that claimant provide proof of her claim and requires
that the "[p]roof must be satisfactory to Sun Life."  (AR0027[3] (emphasis added); see
also AR0057.)  While the First Circuit has declined explicitly to hold that this language
triggers discretionary review, in reviewing similar policy terms it noted that a number of
other circuits have held that the words "to us" after "satisfactory" is an indicator of
subjective, discretionary authority on the part of the administrator.  See Brigham v. Sun
Life of Canada, 317 F.3d 72, 81 (1st Cir. 2003) ("[W]ith the possible exception of the
Second Circuit in dicta, no federal appeals court has viewed the type of language at
issue in this case as inadequate to confer discretion on the plan administrator.").  This
court now joins its sister courts in holding that the "satisfactory to Sun Life" language
confers discretionary authority adequate to trigger the differential "arbitrary and
capricious" standard of review.  See Brigham v. Sun Life of Canada, 183 F. Supp. 2d
427, 435 (D. Mass. 2002) (Ponsor J.) (noting "judges in the District of Massachusetts
have regularly construed the phrase 'satisfactory to us' to indicate a clear grant of

_____

　　　　[3] "ARnnnn" refers to page "nnnn" of the Administrative Record.

discretionary authority").

While plaintiff does not explicitly dispute the discretionary authority of the administrator to determine eligibility, she suggests that because defendant both funds and administers benefits, a conflict of interest exists which requires either de novo review or some other standard of review less deferential than arbitrary and capricious. (See Docket # 26, 2). Indeed, Firestone noted in dicta that, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (internal quotation marks and citation omitted). Several circuits require "heightened scrutiny" when the insurance company both makes the determination of eligibility and pays the benefits. See Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 384-386 (3d Cir. 2000) (collecting and summarizing differences between the circuits); Doyle, 144 F.3d at 184 (same). The First Circuit, however, has held that absent a showing by the claimant of some specific evidence of a conflict, the arbitrary and capricious standard is applicable even such cases. See Doyle, 144 F.3d at 184; Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999) ("[W]e do not think that Travelers' general interest in conserving its resources is the kind of conflict that warrants de novo review."). Nevertheless, the First Circuit has recognized that the reasonableness of an insurer's decision must be evaluated in light of the possible existence of a conflict of interest under the circumstances. See Pari-Fasano v. ITT Hartford Life and Acc. Ins. Co., 230 F.3d 415, 419 (1st Cir. 2000).

Finally, where, as here, the case is to be decided on the administrative record, a jury trial is not available. Liston, 330 F.3d at 24 n.4. Indeed, because there is no fact-finding required, the record stands on its own, no trial is necessary. Therefore, summary judgment is merely a mechanism to resolve the case, and no special inferences need be drawn to resolve doubts in favor of the non-moving party.[4] Id. at 24.

## III.    Factual Background

### A.    Plaintiff's Employment and Policy Terms

On May 15, 2003, her last day of full-time employment, plaintiff had been employed by SLFD for approximately eighteen years. (AR0076.) As an employee of SLFD, she was covered by a group long-term disability ("LTD") plan. To receive benefits under the plan, a claimant is required to: (1) satisfy an elimination period with the required days of disability; (2) provide proof of continued disability; and (3) have "regular and continuing care by a physician who provided appropriate treatment . . . in accordance with the disabling condition." (AR0013.) The elimination period is a period of 180 days during which a claimant must "be unable to perform all of the material and substantial duties of [her] occupation." (AR0003, AR0009.)

### B.    Plaintiff's Prior Medical History

---

[4] Because summary judgment is merely a procedural mechanism to allow the court to adjudicate a dispute in which the facts are not in question, defendant's argument that the court should deny or dismiss plaintiff's motion for summary judgment because she failed to include a statement of material facts is without merit. (See Docket # 27, 1.)

Plaintiff has suffered from Crohn's disease, an inflammatory bowel disease, since approximately 1985.  (AR0160.)  As a result of this condition, she requires regular outpatient visits for evaluation, along with semi-monthly medication infusions administered on an outpatient basis.  (Id.; AR0290-91.)  In addition, during the period of her employment she has required inpatient hospitalization on several occasions, including surgery in 1991 and again in 1994, as well as an interventional radiology procedure in 2000.  (AR0290.)

### C.    Spring-Summer 2003 Surgery and Recovery

On May 15, 2003, Reeder suffered abdominal pain and subsequently had an open cholecystectomy to remove her gall bladder on May 31, 2003.  (AR0070.)  Office notes from an examination three weeks later, on June 20, describe her as feeling "unwell" and conclude that she was experiencing a "slow recovery from the cholecystectomy" and diarrhea.  (AR0117.)  An exam four days later noted that plaintiff "looked tired" and that she "complain[ed] of occasional diarrhea when she eats and severe rectal pain." (AR0115.)

On July 23, 2003, plaintiff contacted her gastroenterologist, Dr. Greta Taitelbaum ("Dr. Taitelbaum"), and asked for an appointment.  The nurse's notes of the call describe plaintiff as stating she was "slated to go back to work part-time on 8/4/03" but was "being advised by people to go on disability."  (AR0183.)

Plaintiff was paid salary under a short-term disability plan through November 9, 2003.  (AR0159.)  In an Attending Physician's Statement ("APS") sent to Sun Life on July 28, 2003, to support her claim for short-term disability benefits, Dr. Taitelbaum

6

described plaintiff as "[r]ecovering from cholecystectomy" and ambulatory.  At that time, she assessed plaintiff's physical impairment as "[c]lass 3 - [s]light limitation of functional capacity; capable of light work," noting this was "due to Crohn's disease" and assessed her mental impairment as "[c]lass 1 - [p]atient is able to function under stress and engage in interpersonal relations (no limitations)." (AR0071 §§ 7-8.)  She also marked the work capabilities checkboxes to indicate that plaintiff had no current limitations/restrictions to perform either her own occupation or any other work.  (Id. § 8C.)  The sections of the form allowing the physician to comment on stress generally and stress at work were left blank.  (Id. § 7A-B.)  A companion form did note that plaintiff could not work if "very ill" and that she needed to be absent from work for her Remicade treatments.  (AR0072-73.)

On July 29, 2003, Dr. Taitelbaum described plaintiff's medications as "unchanged" and her last treatment as going "uneventfully."  (AR0181.)  On physical exam, she described plaintiff as "appear[ing] tired" and her abdomen as "slightly distended, but otherwise normal."  (AR0182.)  She noted that plaintiff was "not sure about whether she wants to return to work" and was "considering going on disability." (AR0181.)  Plaintiff complained of being tired and "thought she need[ed] to work shorter days."  (Id.)  Because Dr. Taitelbaum was planning on being out for several weeks, she arranged for plaintiff to obtain a "can go back to work note" from her nurse if she wanted one.  (Id.)

Plaintiff did return to work part-time between August 25 and September 18, 2003, but stated that she was unable to continue working because she "became too ill."

7

(AR0216A; AR0017-19.)

According to Dr. Taitelbaum's notes, at a follow-up visit on September 23, 2003, plaintiff began crying and shaking with anxiety and stated that she needed to apply for complete disability due to "embarrassment when she loses bowel movements at work, multiple missed days at work, need for frequent appointments and medications, anxiety, panic attacks, and the inability to concentrate." (AR0174.) The notes indicate plaintiff stated that "she does not believe she can work part time at all." (AR0175.) Dr. Taitelbaum "told the patient that [she] would be as supportive as possible about her attempt to have a complete disability and her limitation due to her illness and anxiety." (Id.) She noted "no change in hearing and vision" and [n]o change in mental status" in the record, but concluded plaintiff was suffering from "[s]evere anxiety and depression" and "Crohn's disease with severe panic attacks and anxiety." (Id.)

Plaintiff was seen for individual psychotherapy on September 24, 2003, with Suzanne Sayle, R.N. (AR0234.) Ms. Sayle notes "[patient d]id try to return to work, but lost bowel control several times which increased panic attacks which made working very hard." (Id.) The "plan" section of this visit record encouraged plaintiff to exercise and indicated that she "[w]ill also look into volunteer work and into Curves."[5] (Id.)

### D.    Initial Long-Term Disability Application

On October 22, 2003, plaintiff filed a claim for benefits under the group LTD policy insured by Sun Life. (AR0217-25.) She listed Crohn's disease as the cause of

---

[5] "Curves" appears to refer to a fitness franchise marketed to women. See http://www.curves.com/about_curves/ (last visited July 13, 2007).

her disability.  (AR0217.)  The section of the form filled out by her employer described

plaintiff as a customer service administrator and identified her job as requiring 5.5

hours a day of sitting, 0.5 hours of standing and 1.0 hour of walking, with occasional

bending/stooping, but noted that she could alternate positions at will.  (AR0216C.)

Dr. Taitelbaum completed a second APS, attached to the claim application, in

which she now assessed plaintiff's physical impairment level as "[c]lass 5 - [s]evere

limitation of functional capacity incapable of minimum (sedentary) activity" and her

mental impairment as "[c]lass 5 - [p]atient has significant loss of psychological,

physiological, personal and social adjustment (severe limitations)."  (AR0227-28.)

Under section six of the form detailing specific physical limitations, however, Dr.

Taitelbaum selected checkboxes indicating that plaintiff was able to stand/walk for "1-4

hours," sit for "3-5 hours," and drive for "1-3 hours" in a normal day.  (AR00227 ¶ 6.)

She selected, en masse, checkboxes for the range "1-33%" describing the percentage

of the day in which plaintiff could perform a host of activities such as bending, climbing,

squatting, kneeling, crawling, etc., and noted that she could lift a maximum weight of

fifteen pounds.  (Id.)  Nevertheless, Dr. Taitelbaum checked the "no" box on the last

question in section six, "[c]an the employee work an 8 hr. day with the above

restrictions," and added the note "[s]he feels she needs complete disability."  (Id.)  Dr.

Taitelbaum made similar notations in two other sections of the APS; under the work

capabilities section (AR0228 § 10), rather than selecting one of the yes/no checkboxes

which ask for the physician's opinion on whether the patient is capable of working

within her limitations, she wrote, "[s]he says she cannot work again," and under the

9

vocational rehabilitation section she checked the box indicating she had not reviewed the duties of the patient's occupation but added "patient says she cannot work." (AR229 § 12.)

### 1.    Defendant's Review of Disability Application

Defendant had the two APSs and the medical record reviewed by a medical consultant, William Watson, M.D. ("Dr. Watson").  (AR0246-47.)  He concluded that the medical record showed recovery from the surgery, "no evidence of an exacerbation of her Crohn's Disease" and "normal physical examinations."  (Id.)  He discounted plaintiff's concerns of incontinence, citing a lack of specifics in the record as to "the actual frequency of bowel movements, a differentiation between 'incontinence' and 'urgency' and no indication of nocturnal urgency or cramps."  (Id.)  He noted laboratory findings indicating "nutrition is well in hand."  (Id.)  In addition, he reviewed the differences between the earlier APS indicating plaintiff was capable of returning to full-time work and the later APS citing plaintiff's belief "she needs complete disability," but noted her statements that she was planning to volunteer.  (Id.)  He also commented that while the APS showed a change from a mental class 1 (no impairment) to a class 5 impairment in the later APS, there were no mental assessments in the record other than the statements of anxiety. (Id.)  Dr. Watson's conclusion was that, from the records, laboratory test results and the APSs, there was no evidence to support a claim of total disability, and the only restrictions on plaintiff's ability to work were "reasonable access to toilet facilities." (Id.)

A registered nurse employed by defendant reviewed the record and Dr.

Watson's report, concurring with his conclusion.  (AR0249.)  In addition, she noted that

there was no record of continuing mental heath evaluations or treatments.  (Id.)

### 2. Denial of Plaintiff's Initial Disability Application

On the basis of this record, defendant denied plaintiff's claim for benefits.

(AR0251-54.)  The denial letter reviewed the requirements of plaintiff's job, her medical

history and the policy definition of disability.  (Id.)  It noted that the laboratory data and

physical examinations did not support active Crohn's disease, and that the medical

records did not support plaintiff being physically unable to perform her job.  (Id.)

Finally, it concluded that the note from the single mental health visit did not opine that

she was unable to perform the duties of her occupation, and that there was no other

record of treatment for mental health issues during the elimination period.  (Id.)

Because defendant concluded that the record did not support disability past July 29,

2003, the six-month elimination period requirement ending November 10, 2003, was

not satisfied and the claim was denied.  (Id.)

### E. Appeal of Claim Denial

After this initial denial, plaintiff asked defendant to reconsider her claim.

(AR0260-65.)  In particular, she argued that Sun Life had not adequately considered

the evidence in the record of anxiety and panic, which made it impossible for her to

perform the duties of her job.  (Id.)  She provided further documentation to support her

claim, including a favorable decision from the Social Security Administration finding her

entitled to disability benefits,[6] along with letters and evaluations from physicians and mental health workers describing her physical and mental condition and additional post-denial medical records.

Dr. Burt Hall ("Dr. Hall"), an internal medical consultant for Sun Life, reviewed the updated file, which he described as "voluminous medical records" consisting of notes on clinic visits, laboratory results, imaging studies and a colonoscopy report. (AR0393-96.) In his report, Dr. Hall concluded that there was "no evidence of any specific complication attributable to the open cholecystectomy," and that it did not appear to him "that the frequency or character of the loose bowel movements changed appreciably or significantly in the 6-8 weeks postoperatively." (AR0394.) He found no evidence of a change in the clinical condition of plaintiff to support part-time as opposed to full-time return to work in September of 2003 or that would support a cessation of work altogether. (AR0395.) His conclusion was that plaintiff "underwent an unremarkable recovery from her" surgery, and that her clinical condition has been relatively stable since. (Id.) While he acknowledged plaintiff's anxiety, depression and panic attacks, his assessment was that the frequent loose bowel movements appeared to be her most incapacitating symptom. However, he concluded that she was capable of at least part-time work. (AR0396.) He noted that, in his experience, patients with

---

[6] The fact that the Social Security Administration found plaintiff entitled to benefits is not controlling on a determination whether defendant acted arbitrarily and capriciously because of the difference in the eligibility requirements. See Pari-Fasano v. ITT Hartford Life and Acc. Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000) (holding that "benefits eligibility determinations by the Social Security Administration are not binding on disability insurers").

active Crohn's disease are struggling to maintain weight and are generally losing

weight.  (Id.) The fact that plaintiff had been able to maintain her weight suggested to

him that her complaints of loose bowel movements might be overstated, and he

recommended a course of treatment that might better control plaintiff's symptoms.  (Id.)

On the basis of Dr. Hall's review of the entire file, as well as the earlier review by

Dr. Watson and the Sun Life registered nurse, defendant again rejected plaintiff's

claim.  (AR 0397-401.)  The denial letter again noted Dr. Taitelbaum's original APS in

which she indicated plaintiff had no mental impairment and stated that plaintiff could

return to sedentary or light work.  After citing the opinions of its medical experts,

defendant's letter concluded that "the medical records, therefore do not document a

change in Ms. Reeder's chronic condition [following her recovery from surgery.]"[7]

## IV.    Discussion

### A.    Plaintiff's Physical Limitations

Based on this factual history, defendant's decision to deny benefits was

supported by substantial evidence in the record and thus was neither arbitrary nor

capricious.  Sun Life had all material submitted by plaintiff reviewed both internally by a

registered nurse and by an outside consulting physician before initially denying the

claim.  It then had that record plus the additional material submitted on appeal reviewed

by a second, outside consulting physician.  Each reviewer concluded that the medical

evidence showed that plaintiff was capable of doing at least some sedentary work,

---

[7] Defendant noted that Dr. Hall's comments on full-time versus part-time work did not affect their decision, as plaintiff also did not meet the policy requirements for partial disability benefits.  (See AR0400.)

which was typical of her job duties.  While plaintiff unquestionably suffered from Crohn's disease, there was no evidence of any change in her clinical condition after she recovered from her surgery.  As Sun Life noted, she had successfully performed the duties of her job for eighteen years while suffering from this condition.  In addition, her physician had cleared her to return to work approximately three months after her surgery.

The decision of all three reviewers to discount the second APS, classifying plaintiff as both mentally and physically impaired, was not unreasonable in light of the results of the physical examinations and laboratory tests and the notes in the APS. Nowhere does Dr. Taitelbaum suggest that it is her opinion that plaintiff cannot work. Rather, the APS and the record show that plaintiff made the decision not to return to work, contacted Dr. Taitelbaum and she agreed to be as supportive as possible. However, the only support in the APS for disability are Dr. Taitelbaum's notations that plaintiff states she cannot work.  Defendant also relied on Ms. Sayle's notes memorializing exercise plans and volunteering to reach the conclusion that plaintiff was capable of sedentary work.  The use of three reviewers, two of whom were independent consultants, and all of whom agree, militates against this court concluding that defendant's decision was arbitrary.  It is not an unreasonable reading of the record to conclude that plaintiff was physically capable of returning to her job once she recovered from her surgery, with no limitations beyond those that existed prior to surgery due to the complications of Crohn's disease.

**B.     Plaintiff's Mental Limitations**

14

The record does show an increase in plaintiff's level of anxiety after her surgery. Defendant and its consultants spend much less time analyzing this component of Dr. Taitelbaum's assessment.  Defendant, however, notes that the record shows only a single visit to a mental health professional during the elimination period, and that there is no indication of "regular and continuing care by a physician who provided appropriate treatment," as required by the policy during this period.  (AR0013.)

It is not unreasonable for Sun Life to require regular and continuing care to qualify for benefits, both to confirm that a disabling condition exists and to see if that condition can be treated so the insured can return to work.  It is neither arbitrary nor capricious for it to conclude that a single mental health visit does not meet this requirement.

## C.    Additional Information Provided on Appeal

While plaintiff did submit additional information with her appeal of the rejection of her initial claim, it related to treatment after the end of the elimination period. Therefore, it is not unreasonable for defendant to fail to discuss this information in its decision, since the policy required plaintiff to show disability during the elimination period.

Plaintiff also argues that defendant failed to consider evidence of premature ventricular beats in March and April 2002, considered by her physician to be possibly due to anxiety, and other medical records also noting anxiety in late 2002.  Defendant's position is that these records relate to a period in which plaintiff was able to perform her job and thus support its conclusion that her medical condition did not preclude her from

working.  It argues that its review of the medical records show no change in plaintiff's condition that would support an inability to perform the duties of her job once she recovered from her surgery.[8]  In support of its decision, it also points to conflicting information in the record by different health professionals concerning plaintiff's condition and the lack of treatment for mental health issues during the elimination period.  Again, defendant did not act arbitrarily or capriciously in discounting this additional material; rather, it considered how the information related to plaintiff's ability to work during the elimination period and concluded that she had not shown either a physical or mental change from her condition prior to her surgery.  Reasoning that plaintiff was capable of performing the duties of her sedentary job for many years prior to the 2003 cholecystectomy, it concluded that there was no support for the change from Dr. Teitelbaum's earlier APS allowing plaintiff to return to work and the later one finding her totally impaired.  This was supported by the notes in the APS and medical file indicating that plaintiff made the decision not to return to work, but that her doctor never indicated that she believed plaintiff was unable to work.  This evidence reasonably supports Sun Life's conclusion that plaintiff was not unable to perform the duties of her job.[9]

---

[8] A February 19, 2004 form filled out by Nurse Sayle notes "[p]t's anxiety/panic attack[s] began in the 80's."  (AR0277.)

[9] Plaintiff's brief in support of her motion for summary judgment (Docket # 26) references two letters from her employer (AR0271A, B) that do not appear in the court's copy of the administrative record.  It appears that these letters state that plaintiff was not adequately performing her job during the period she returned to work part-time.  Even if properly part of the record to be considered by defendant, these letters would not, as the contents are described, prove that plaintiff was incapable of performing the

16

**D.    Conclusion**

Because the LTD policy required plaintiff to provide proof of disability satisfactory to defendant, and Sun Life examined the evidence provided and articulated reasonable grounds for its decision to deny the claim, I find that it did not act arbitrarily or capriciously.  In addition, there is no evidence that defendant acted in bad faith and therefore breached its fiduciary duty to conduct a fair and complete evaluation of her claim.

Accordingly, plaintiff's motion for summary judgment (Docket # 25) is DENIED, and defendant's motion for summary judgment (Docket # 22) is ALLOWED.

_____July 24, 2007_____                              _____/s/Rya W. Zobel_____
          DATE                                                          RYA W. ZOBEL
                                                            UNITED STATES DISTRICT JUDGE

duties of her job.